1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10

11   DONNA ELIZABETH YOCUM,                )   Case No.: 1:13-cv-01825 - JLT
                                           )
12               Plaintiff,                )   ORDER REMANDING THE ACTION PURSUANT
                                           )   TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
13          v.                             )
                                           )   ORDER DIRECTING ENTRY OF JUDGMENT IN
14   CAROLYN W. COLVIN,                     )   FAVOR OF PLAINTIFF DONNA YOCUM AND
     Acting Commissioner of Social Security, )   AGAINST DEFENDANT CAROLYN W. COLVIN,
15                                          )   ACTING COMMISSIONER OF SOCIAL
                                           )   SECURITY
16               Defendant.                )
                                           )
17   _____ )

18          Plaintiff Donna Elizabeth Yocum asserts she is entitled to benefits under Title II of the Social

19   Security Act.  Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the evidence,

20   and seeks judicial review of the decision to deny her application for benefits.  Because the ALJ erred in

21   finding Plaintiff was capable of performing her past relevant work, as explained below, the

22   administrative decision is **REMANDED** for further proceedings.

23                                    **BACKGROUND**

24          Plaintiff filed his application for benefits on October 25, 2010, alleging she became disabled on

25   January 30, 2010.  (Doc. 10-3 at 13.)  The Social Security Administration denied his application

26   initially and upon reconsideration.  (Doc. 10-4.)  After requesting a hearing, Plaintiff testified before

27   the ALJ.  (Doc. 10-3 at 26.)  The ALJ determined Plaintiff was not disabled and issued an order

28   denying benefits.  (Doc. 10-3 at 13-19.)  The Appeals Council denied plaintiff's request for review of

1

1  the decision. (*Id.* at 2-4.) Thus, the ALJ's determination became the final decision of the Commissioner

2  of Social Security ("Commissioner").

3  **STANDARD OF REVIEW**

4  District courts have a limited scope of judicial review for disability claims after a decision by

5  the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

6  such as whether a claimant was disabled, the Court must determine whether the Commissioner's

7  decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

8  Court must uphold the ALJ's determination that the claimant is not disabled if the proper legal

9  standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

10  *Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

11  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

12  reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

13  389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole

14  must be considered, because "[t]he court must consider both evidence that supports and evidence that

15  detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

16  **DISABILITY BENEFITS**

17  To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to

18  engage in substantial gainful activity due to a medically determinable physical or mental impairment

19  that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C.

20  § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

21  
22  his physical or mental impairment or impairments are of such severity that he is not
only unable to do his previous work, but cannot, considering his age, education, and
work experience, engage in any other kind of substantial gainful work which exists in
the national economy, regardless of whether such work exists in the immediate area in
which he lives, or whether a specific job vacancy exists for him, or whether he would
be hired if he applied for work.

23  
24  

25  42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability.  *Terry v.*

26  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability,

27  the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

28  gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

2

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927, 416.929.

**A.    Medical Evidence**

On December 8, 2009, Dr. John Casey noted Plaintiff reported having low back pain that was "progressively getting worse." (Doc. 10-8 at 3.) He ordered an MRI of her lumbar spine, which showed "mild multilevel degenerative disc disease with areas of disc desiccation and annular bulging." (*Id.* at 8.) Dr. John Martin determined: "The greatest annual bulging is at L2-L3 and slightly less at L3-L4." (*Id.*) Further, Dr. Martin opined there was "no spinal or foraminal stenosis." (*Id.*)

In January 2010, Dr. Casey noted Plaintiff reported "having persisting ongoing pain complaints to her lumbar spine," which was "radiating into her buttocks and into the sciatic notch region." (Doc. 10-8 at 2.) He prescribed Tramadol for pain, and Soma as a muscle relaxant. (*Id.* at 2, 4.) In addition, Dr. Casey referred Plaintiff to twelve sessions of physical therapy. (*Id.* at 6.)

Plaintiff completed her physical therapy in February 2010. (Doc. 10-8 at 5.) Her therapist, Hailey Himes believed Plaintiff "made excellent progress in therapy." (*Id.*) Plaintiff "report[ed] that her pain levels . . . decreased significantly" from a range of "3-9/10" to "2-5/10." (*Id.*) Ms. Himes determined Plaintiff's flexion, extension, rotation, and lateral flexion were within normal limits. (*Id.*)

On March 5, 2010, Dr. Richard Slovek performed an orthopedic surgery consultation. (Doc. 10-8 at 33, 48.) Dr. Slovek noted Plaintiff had an x-ray that showed moderate osteoarthritis in the right hip and very mild osteoarthritis in the left hip. (*Id.*) In May 2010, Dr. Slovek performed a right hip total replacement. (*Id.* at 10, 15-17.)

After performing the surgery, Dr. Slovek continued to treat Plaintiff. At a follow-up

appointment on May 20, 2010, Dr. Slovek noted Plaintiff was "doing home rehabilitative therapy and exercise." (Doc. 10-8 at 52.)  Dr. Slovek authorized Plaintiff to "start outpatient physical therapy." (*Id.*)  In June 2010, he noted Plaintiff was "[w]alking with a cane," and Plaintiff reported "pain in her other hip [and] low back." (*Id.* at 53.)

In July 2010, Plaintiff continued to report pain in her low back and left hip.  (Doc. 10-8 at 30.)  Dr. Slovek noted Plaintiff was "[d]oing well with her right hip without problems or complications but the back and left hip [were] keeping her from returning to work." (*Id.* at 54.)  Due to her symptoms, Plaintiff was "limited in rehab, standing, and walking." (*Id.*)

Dr. Slovek gave Plaintiff an epidural steroid injection for the back pain in August 2010.  (Doc. 10-8 at 28-29.)  Plaintiff reported "doing very well" after the injection, which also helped Plaintiff's left hip pain.  (*Id.* at 56.)  Dr. Slovek noted Plaintiff was "able to sit, stand and walk," but was "not at a place where she [could] return to work." (*Id.*)  Dr. Slovek continued to opine that Plaintiff was unable to return to work due to her left hip through the fall of 2010.  (*Id.* at 58.)

An x-ray taken of Plaintiff's left hip on November 19, 2010, showed "a worsening in her hip condition." (Doc. 10-8 at 58.)  Dr. Slovek found "[l]oss of joint space, sclerosis and cystic and osteophytic change and severe enough for total hip replacement surgery." (*Id.*)

On January 6, 2011, Dr. Slovek performed a left hip total replacement.  (Doc. 10-8 at 64, 72.)  He opined Plaintiff was "doing well" only two weeks after the surgery, and she was "already on the cane." (*Id.* at 65.)  Plaintiff reported she "ha[d] much less pain than previously," and it was "under good control." (*Id.*)  Dr. Slovek recommend Plaintiff go to "full physical therapy rehab." (*Id.*)

On February 23, 2011, Dr. Slovek noted Plaintiff had completed physical therapy, and was "[d]oing well, walking well." (Doc. 10-8 at 66.)  Plaintiff was"[w]alking without external support," and she reported she was "[n]ot having any significant pain." (*Id.*)  However, Plaintiff said she had "symptoms in both her left thumb and right shoulder." (*Id.*)  Upon examination, Dr. Slovek found Plaintiff had "[n]o pain in range of motion of the hip," but exhibited tenderness in her right arm and left thumb.  (*Id.*)  He gave her an epidural injection for the pain in her thumb and shoulder.  (*Id.* at 68.)

In March 2011, Dr. Slovek noted that x-rays of Plaintiff's left hip "showed satisfactory position and alignment." (Doc. 10-8 at 68.)  Dr. Slovek observed Plaintiff was "[d]oing excellent" and had

4

"[n]o symptoms whatsoever, no limp." (*Id.*)  Further, Dr. Slovek noted that Plaintiff "did very well with the injections" that were done in the prior month.  (*Id.*)

Dr. A. Nasrabadi reviewed Plaintiff's medical record and completed a physical residual functional capacity assessment on April 26, 2011. (Doc. 10-8 at 77-81.)  Dr. Nasrabadi noted Plaintiff had bilateral total hip replacement "but ha[d] responded well to surgery." (*Id.* at 77, 83.)  According to Dr. Nasrabadi, Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk with normal breaks for about six hours in an eight-hour day; and sit about six hours in an eight-hour day, with normal breaks.  (*Id.* at 78.)  Dr. Nasrabadi believed Plaintiff was able to frequently climb ramps and stairs, but never climb ladders, ropes and scaffolds.  (*Id.* at 79.)  Also, Dr. Nasrabadi determined Plaintiff could frequently balance, stoop, kneel, crouch, and crawl.  (*Id.*)  Due to the reported shoulder pain, Dr. Nasrabadi indicated Plaintiff had limited ability to reach all directions, including overhead.  (*Id.*)

In June 2011, Dr. Slovek noted Plaintiff was "still disabled" and "unable to return to work to her former occupation." (Doc. 10-8 at 97.)  Plaintiff reported having problems standing and walking, and was "limited in her ability to bend, lift and show as well as run the vacuum and other household chores." (*Id.*)  Further, Plaintiff said she had "severe pain problems in … her low back." (*Id.*)  Dr. Slovek found Plaintiff had "[t]enderness over L4-5, L5-S1," and "[t]enderness in the right and left sciatic notch." (*Id.*)  He recommended an epidural steroid injection "since she ha[d] done well with that in the past." (*Id.*)

In July 2011, Dr. Slovek noted Plaintiff had relief from the epidural steroid injection, "but not as much relief as previously." (Doc. 10-8 at 98.)  Plaintiff reported she also had relief from aquatic therapy, and she "use[d] a TENS unit some." (*Id.*)

Dr. Slovek completed a physical residual functional capacity questionnaire on August 1, 2011. (Doc. 10-9 at 4-7.)  Dr. Slovek noted Plaintiff had been diagnosed with degenerative joint disease in her right and left hips, as well as her lumbar spine.  (*Id.* at 4.)  Her prognosis was "fair." (*Id.*)  According to Dr. Slovek, Plaintiff's symptoms included back pain ranging "3-8/10," and "limited standing, stooping/lifting, [and] bending." (*Id.*)  He believed Plaintiff's pain was severe enough to frequently interfere with her attention and concentration.  (*Id.* at 5.)  Dr. Slovek opined Plaintiff was able to walk

six blocks without requiring rest; sit forty-five minutes at one time, and about four hours in an eight-hour day; stand/walk fifteen minutes at one time, and less than two hours total in an eight-hour day; lift and carry less than ten pounds occasionally; rarely twist, stoop, and bend; and never crouch, squat, or climb ladders. (*Id.* at 5-7.) He believed Plaintiff would require a job that permitted shifting positions at will, and the ability to take two unscheduled breaks for about "20 – 30 minutes" each day. (*Id.* at 6.) Dr. Slovek reported Plaintiff did not require a cane or other assistive device for walking. (*Id.*)

Dr. C. Bullard reviewed the medical record and offered a case analysis on October 12, 2011. (Doc. 10-9 at 9-10.) Dr. Bullard noted Plaintiff's "hip surgeries were uncomplicated and her back pain has been [treated] with NSAIDS, Ultram and Neurontin." (*Id.* at 10.) Further, Dr. Bullard observed that Plaintiff "was felt not to be a candidate for back surgery and conservative [treatment] was suggested." (*Id.*) Dr. Bullard affirmed the opinion of Dr. Nasrabadi "as written." (*Id.*)

**B.     Administrative Hearing**

Plaintiff testified before the ALJ on June 4, 2012. (Doc. 10-3 at 26.) She said she last worked in January 2010 as a bookseller at Barnes & Noble. (*Id.* at 28.) Plaintiff reported that her job duties included "[w]aiting on customers, using the computer, carrying books, finding books for customers, climbing ladders, opening boxes, setting up displays in the store, [and] dragging the furniture around to set up displays in new areas." (*Id.*) According to Plaintiff, "There was no sitting on the job," and she was required to lift "big stacks of books." (*Id.* at 28-29.) She said she stopped working because she had "[a] lot of pain" in her hips, shoulder, left thumb, and left knee. (*Id.* at 29.)

She reported that the pain started in 2004, and she eventually received treatment from an orthopedic surgeon, Dr. Slovek, in 2010. (Doc. 10-3 at 29-30.) Dr. Slovek told Plaintiff she "needed a hip replacement" and she "had bulging disks in [her] lower back." (*Id.* at 30.) Plaintiff testified the total hip replacements relieved "some" of the problems with her right hip, and all the problems with her left hip. (*Id.* at 30-31.) She reported that Dr. Slovek prescribed a cane, which Plaintiff used for the pain in her back, right hip and right leg. (*Id.* at 31.) Plaintiff said she had two epidural injections for her back pain, which provided short-term relief. (*Id.* at 32.) Plaintiff testified that Dr. Slovek gave her oral medication, and further surgery was not currently a treatment option. (*Id.*)

According to Plaintiff, she usually spent her days sitting on the couch, and that she was unable

6

to stand more than ten minutes. (Doc. 10-3 at 33, 36.) She said she performed "some" household chores, such as laundry. (*Id.*) Plaintiff explained that her husband hooked a rope to the laundry basket so she could drag it, and she sat on a chair to load and empty the washer and dryer. (*Id.* at 34.) She said she "occasionally" accompanied her husband on trips to the grocery store. (*Id.*) Plaintiff estimated that she was able to walk about 15 minutes with her cane. (*Id.* at 36.)

She testified that she was in pain "[a]ll the time," and it affected her ability to think and concentrate. (Doc. 10-3 at 34.) Plaintiff said "[j]ust about everything" affected her back pain, and she was unable to garden or "carry anything very long or very heavy." (*Id.* at 35.) In addition, Plaintiff said she could not bend over easily, such as to "pick something off the floor." (*Id.*) Plaintiff estimated that she could lift "10, 15 pounds" at one time, but she could only do so "once or twice and then [she was] done." (*Id.*) She tried to avoid reaching overhead due to her shoulder pain. (*Id.* at 38.)

George Meyers, a vocational expert ("VE"), characterized Plaintiff's past relevant as a combination of sales clerk for books and stock clerk, which required light exertion and heavy exertion respectively under the *Dictionary of Occupational Titles*.[1] (Doc. 10-3 at 42.) However, the VE observed that Plaintiff performed her duties "at the medium work category." (*Id*.)

The ALJ asked the VE to consider a hypothetical individual the same age as Plaintiff, with the same "education and work experience." (Doc. 10-3 at 41-42.) The ALJ explained the person was "limited to light work," but could "frequently climb ramps or stairs[;] never climb ladders, ropes, scaffolds[;] frequently balance, stoop, kneel, crouch, and crawl[;] [and] may occasionally reach overhead." (*Id.* at 42.) The VE opined such a person was unable to perform Plaintiff's past relevant work as "she performed it." (*Id.*) On the other hand, the VE believed the hypothetical worker would be able to perform Plaintiff's past relevant work as a books sales clerk "as performed in the national economy." (*Id.*)

## C.     The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

---

[1] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

gainful activity after the alleged onset date of January 30, 2010. (Doc. 10-3 at 15.) At step two, the ALJ found Plaintiff's severe impairments included: "Status post bilateral hip replacements, degenerative joint disease of the shoulders, and degenerative disc disease lumbar spine." (*Id.*) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.*) Next, the ALJ found Plaintiff had "the residual functional capacity to perform light work as defined by 20 CFR 404.1567(b)." (*Id.* at 15.) The ALJ explained:

> The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk in combination for 6 hours out of an 8-hour day; and sit for up to 6 hours out of an 8-hour day. The claimant can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds. She can occasionally reach overhead.

(*Id.* at 16.) Based upon this residual functional capacity, the ALJ concluded Plaintiff was "capable of performing past relevant work as a sales clerk for books . . . as generally performed." (*Id.* at 18-19.) Therefore, the ALJ found Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 19.)

## DISCUSSION AND ANALYSIS

Plaintiff asserts the ALJ erred in evaluating her ability to perform past relevant work at step four of the sequential evaluation. At step four, a claimant has the burden of proof to establish that she cannot perform her past relevant work "either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). Past relevant work is work performed in the last 15 years that lasted long enough to learn it, and was substantial gainful employment. SSR 82-61, 1982 SSR LEXIS 31.[2] The ALJ is not required to make "explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). Nevertheless, the Ninth Circuit explained that "the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.*, 249 F.3d at 844.

The Social Security Administration has set forth three tests for an ALJ to determine whether a claimant retains the capacity for past relevant work, including:

---

[2] Although Social Security Rulings issued by the Commissioner to clarify regulations and policies do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1.  Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packing job," etc.

2.  Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.

3.  Whether the claimant retains the capacity to perform the functional demands the job duties of the job as ordinarily required by employers throughout the national economy.

SSR 82-61, 1982 SSR LEXIS 31, at *2-3.  To determine how a claimant actually performed her work, an ALJ may consider: "(1) the claimant's own testimony, and (2) a properly completed vocational report."  *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002), citing *Pinto*, 249 F.3d at 845, accord. SSR 82-61, SSR 82-41; *see also* SSR 82-62, 1982 SSR LEXIS 27, at * 6-7 ("statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work").  Usually, "the best source for how a job is generally performed" in determining the requirements of a claimant's past relevant work is the *Dictionary of Occupational Titles*, and vocational expert testimony may be considered at step four of the sequential analysis.  *Pinto*, 249 F.3d at 845-46.

Here, the ALJ found Plaintiff had "past relevant work as a sales clerk for books (*DOT* 277.357-034, light, SVP4 performed at the medium exertion) and stock clerk (*DOT* 299.367-014, heavy, SVP4, performed at medium exertion)."  (Doc. 10-3 at 18.)  The ALJ noted that with the above residual functional capacity in mind, the vocational expert testified the limitations and abilities "would not preclude the claimant's past relevant work as a sales clerk for books."  (*Id.*)  As a result, the ALJ concluded Plaintiff was able to perform such work "as generally performed."  (*Id.*)  Accordingly, the ALJ ended the inquiry, and found Plaintiff was not disabled.  (*See id.* at 18-19.)

Plaintiff asserts the ALJ erred in finding she is able to perform her past relevant work because he did not consider the work as a "composite" of sales clerk for books and stock clerk.  (Doc. 15 at 20.) Plaintiff argues this is an error because "she did not perform two separate jobs, but instead performed the job of stock clerk and sales clerk for books as one job."  (*Id.*)  According to Plaintiff, her past relevant work "should be considered as a composite of both sales clerk for books and stock clerk," and separating the tasks into separate positions was improper. (*Id.* at 21, citing *Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001); *Bechtold v. Massanari*, 152 F.Supp.2d 1340, 1344-45 (M.D. Fla. 2001)).

9

1    Defendant does not address whether Plaintiff's work for Barnes & Noble was a composite of

2    book sales clerk and stock clerk positions, but asserts the ALJ did not err in relying upon the testimony

3    of the vocational expert to find that Plaintiff could perform her past relevant work as it is generally

4    performed.  (Doc. 20 at 18.)  Defendant observes that an ALJ is permitted to rely upon expert testimony

5    to determine whether a claimant is able to perform past relevant work as she actually performed it *or* as

6    it is generally performed in the national economy.  (*Id.*, citing 20 C.F.R. §§ 404.1560(b); SSR 82-61;

7    *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)).  Because the vocational expert testified a

8    worker with the above limitations could perform work as a book sales clerk "as generally performed" in

9    the national economy, Defendant asserts it is irrelevant how Plaintiff actually performed her work.  (*Id.*

10   at 18-20.)  Defendant concludes, "[T]he ALJ properly found that Plaintiff had past relevant work as a

11   sales clerk for books, and, based on the vocational expert's unchallenged testimony, that Plaintiff could

12   perform that job as it is generally performed."  (*Id.* at 20.)

13       Significantly, however, the vocational expert testified that Plaintiff performed tasks of "sales

14   clerk for books, <u>DOT</u> number 277.357-034" and *"[i]n that same job*, she did stock clerk, DOT number

15   299.367-014."  (Doc. 10-3 at 41, emphasis added.)  Thus, the vocational expert's testimony was that

16   Plaintiff's job combined the duties required for book sales clerk and stock clerk positions.  This

17   conclusion is consistent with the tasks identified in the *Dictionary of Occupational Titles*:

18
19   > <u>Salesperson, Books</u>:  Suggests selection of books, based on knowledge of current literature and familiarity with publishers' catalogs and book reviews. Arranges books on shelves and racks according to type, author, or subject matter.

20
21
22
23
24
25   > <u>Stock clerk</u>: Takes inventory or examines merchandise to identify items to be reordered or replenished. Requisitions merchandise from supplier based on available space, merchandise on hand, customer demand, or advertised products. Receives, opens, and unpacks cartons or crates of merchandise, checking invoice against items received. Stamps, attaches, or changes price tags on merchandise, referring to price list. Stocks storage areas and displays with new or transferred merchandise. Sets up advertising signs and displays merchandise on shelves, counters, or tables to attract customers and promote sales. Cleans display cases, shelves, and aisles. May itemize and total customer merchandise selection at check out counter, using cash register, and accept cash or charge card for purchases. May pack customer purchases in bags or cartons.

26   (*DOT* §§ 277.357-034, 299.367-014.)

27       Importantly, it is an error for an ALJ to determine that a claimant is able to perform past

28   relevant work that includes only a portion of the claimant's prior tasks.  For example, in *Vertigan*, the

Ninth Circuit found the ALJ erred in finding a claimant was able to perform past relevant work as a cashier, when the record "made it clear that [the claimant] had never exclusively worked as a cashier" and her tasks as a cashier were related to her work as a pharmacy clerk. *Id.*, 260 F.3d at 1051-52. Similarly, here, Plaintiff never worked *only* as a book sales clerk. The vocational expert testified that "in th[e] same job," Plaintiff worked as a sales clerk of books and a store clerk. (Doc. 10-3 at 41.) Thus, the ALJ erred in defining Plaintiff's past relevant work as a sales clerk.

Furthermore, an ALJ may not define a claimant's past relevant work based upon on "the least demanding function." *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985) (where an individual can perform only one or more tasks associated with previous jobs, she must be deemed unable to perform her past relevant work). Here, the ALJ divides Plaintiff's past work into separate positions and omits the tasks from stock clerk, which the vocational expert testified were generally performed at a heavy exertional level, as opposed to the tasks from book sales clerk, which were generally performed at the light exertional level. In so doing, the ALJ defines Plaintiff's past relevant work by using the "least demanding" exertional requirements. The Ninth Circuit has determined such an action "is contrary to the letter and spirit of the Social Security Act." *Valencia*, 571 F.2d at 1086.

The ALJ's errors are not harmless. Because the ALJ ended the inquiry at step four, he failed to ascertain the number of such jobs in the local or national economy for the job, sales clerk of books, as it is performed generally. Consequently, the Court is unable to find the Commissioner has met the burden to show Plaintiff can perform some other work that exists in "significant numbers" in the economy. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

**B.     Remand is appropriate in this matter**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the District Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,

(2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed when no useful purpose would be served by further administrative proceedings, or where the record has been fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to properly evaluate Plaintiff's past relevant work, or determine whether Plaintiff is able to perform work existing in significant numbers in the national economy.  The matter should be remanded because it is not clear from the record that the ALJ would be required to find Plaintiff disabled.

## CONCLUSION AND ORDER

Given the ALJ's errors in evaluating Plaintiff's past relevant work, the administrative decision should not be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.  Because remand is appropriate on this matter, the Court declines to address the remaining issues raised in Plaintiff's opening brief.[3]

Accordingly, **IT IS HEREBY ORDERED**:

1.    Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and

2.    The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Donna Yocum and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 11, 2015**                        **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[3]  Although the Court offers no findings on the matter of Plaintiff's credibility or other issues raised in the opening brief, the ALJ is encouraged to re-evaluate the credibility of Plaintiff's subjective complaints. The ALJ rejected her testimony, in part, due to the "conservative treatment" Plaintiff received following her hip replacement surgeries.  However, Plaintiff received epidural steroid injections, which may not be characterized as conservative treatments.  *See Huerta v. Astrue,* 2009 WL 2241797, at *4 (C.D. Cal. July 22, 2009) (rejecting the ALJ's finding that claimant's pain management treatment, including epidural steroid injections, constituted conservative treatment).